Robert Christian WALKER *v.* STATE of Arkansas

CR 91-228 827 S.W.2d 637

Supreme Court of Arkansas
Opinion delivered March 30, 1992
[Rehearing denied April 20, 1992.]

*Jeff Rosenzweig* and *William C. McArthur*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Clint Miller*, Senior Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. The appellant, Robert Christian Walker, was charged in Pulaski Circuit Court with first degree murder. He was convicted of the lesser included offense of manslaughter and sentenced to ten years imprisonment. Walker

was 14 years old when the offense was committed. He argues manslaughter is an offense of which only a juvenile court has jurisdiction to convict and punish a person his age. We hold the Circuit Court acquired jurisdiction upon the filing of the first degree murder charge, and it retained jurisdiction to convict and sentence for the lesser included offense.

Prior to trial, Walker's motion to transfer the charge to juvenile court was denied. On interlocutory appeal, that decision was affirmed. *Walker* v. *State*, 304 Ark. 393, 803 S.W.2d 502 (1991).

On June 25, 1990, Walker and three friends were swimming at a pond near Jacksonville. Two other boys, Bubba Rains and Aaron Lyman, were also at the pond hunting snakes. Rains was carrying a 410 gauge shotgun, and Lyman a .22 caliber rifle.

Walker approached Lyman and asked to use his rifle. Lyman handed the rifle to him, and Walker shot into the pond. Testimony conflicts as to what happened thereafter. Lyman said Walker cocked the gun and aimed it at Edward Cooper who was fishing with his family some 532 feet from where the boys were standing, saying "I'm going to shoot me a nigger." Chris Sinkey, Walker's best friend, told Walker the gun would probably not shoot that far. Walker said "It probably won't," and he fired. The bullet hit Cooper and killed him.

Kurt Breeden and John Parkinson were present. They testified they did not see Walker cock the gun or aim it at Cooper. Sinkey stated that when Lyman gave the gun to Walker, Lyman told Walker only one bullet remained in it. Sinkey believed the shooting was accidential as Walker thought there was only one bullet left. Sinkey also said that he, Sinkey, uttered the racial slur.

Walker testified that Lyman told him there was only one bullet in the gun. Walker then stated:

> So I shot it, and then afterwards Chris Sinkey said look at those niggers down there. He said let's shoot us a nigger. And I didn't think anything about it, and I just had the gun sitting beside my waist, and I pointed it in that direction and shot the — pulled the trigger. And it went off, and when it went off, I dropped the gun.

Walker said he did not cock the gun before shooting and he did not think the gun was loaded when he fired it the second time. Walker also denied uttering the racial slur.

Expert marksman, Mike Vowell testified that, given the distance and prevailing weather conditions, if Walker had aimed directly at Cooper he would have missed. To hit Cooper, the gun would have to have been aimed over the victim's head.

The jury was instructed on murder in the first degree, murder in the second degree, manslaughter, and negligent homicide. After the jury found Walker guilty of manslaughter, he moved to transfer the case to juvenile court for sentencing because the Circuit Court lacked jurisdiction to sentence him for the offense. The motion was denied.

### 1. Juvenile court Statute

Walker relies on Ark. Code Ann. § 9-27-318 (Supp. 1991) which provides in pertinent part:

> (a) Waiver of juvenile court jurisdiction and transfer to a circuit court is not available when a case involves a juvenile:
>
> \* \* \*
>
> (3) Age fourteen (14) years or age fifteen (15) years and the alleged act, if committed by an adult, would constitute a misdemeanor or a felony, other than those felonies specifically enumerated in subdivision (b)(1) of this section.
>
> (b)(1) When a case involved a juvenile age fourteen (14) or fifteen (15) at the time the alleged delinquent act occurred, the prosecuting attorney has the discretion to file charges in circuit court for an alleged act which constitutes capital murder, murder in the first degree, murder in the second degree, kidnapping in the first degree, aggravated robbery, rape, or battery in the first degree.

The Statute clearly prohibits *charging* a juvenile with a non-enumerated offense in a circuit court. In *Banks v. State*, 306 Ark. 273, 813 S.W.2d 257 (1991), the prosecutor charged a juvenile

with three non-enumerated offenses in a circuit court. We held charges of offenses not listed in § 9-27-318(b)(1) should have been dismissed for lack of jurisdiction. In this case the prosecutor filed a first degree murder charge against Walker in the Circuit Court as permitted by the Statute. We must decide whether the Circuit Court lost jurisdiction when the jury failed to convict Walker of an offense which the Statute authorized to be charged in the Circuit Court.

### 2. Jurisdiction rules

■ Jurisdiction is determined from pleadings. *McKinney* v. *City of El Dorado*, 308 Ark. 284, 824 S.W.2d 826 (1992); *Department of Human Services* v. *Crunkleton*, 303 Ark. 21, 791 S.W.2d 704 (1990). As it was permissible for the prosecutor to charge first degree murder in the Circuit Court, that Court acquired jurisdiction of the subject matter when the charge was filed.

### a. Majority rule

■ While we have not addressed the problem presented in this case, courts in other states have. The law in all but one of those states in which decisions on this question have been made is that, once a general jurisdiction court acquires jurisdiction of a juvenile, it may convict and sentence the juvenile for a lesser included offense which could not have been tried by that court in the first instance. *People* v. *Davenport*, 43 Colo. App. 41, 602 P.2d 871 (1979); *Gray* v. *State*, 6 Md. App. 677, 253 A.2d 395 (1969); *Williams* v. *State*, 459 So. 2d 777 (Miss. 1984); *Dicus* v. *Second Judicial Dist. Court, Etc.*, 97 Nev. 273, 625 P.2d 1175 (1981). See also *Worthy* v. *State*, 253 Ga. 661, 324 S.E.2d 431 (1985), in which the Georgia Supreme Court held, contrary to our decision in *Banks* v. *State, supra*, that a "related" lesser offense alleged to have been committed by a juvenile, and of which the general jurisdiction court lacked initial jurisdiction, could be considered by it along with charges of which the court had jurisdiction.

Typical of these cases is language from *Gray* v. *State, supra*. A juvenile was indicted for murder and pleaded guilty to manslaughter in Circuit Court. Manslaughter by a juvenile was not within the Circuit Court's jurisdiction. The Maryland Special

Court of Appeals stated "once a court lawfully acquires jurisdiction over the person and the subject matter of the litigation, subsequent events will not deprive the court of its jurisdiction, although had they existed at the time, they may have initially precluded the court's jurisdiction." We cited that language with approval in *Hartman* v. *Hartman, Admr.*, 228 Ark. 692, 309 S.W.2d 737 (1958).

### b. The Massachusetts rule

The Supreme Judicial Court of Massachusetts took a different tack in *Metcalf* v. *Commonwealth*, 156 N.E.2d 649 (Mass. 1959). The Court agreed with the appellant, Metcalf, that the Superior Court which had tried him for first degree murder had no authority to punish him for the lesser included offense of second degree murder to which he pleaded guilty. The Court stated that a petition could thereafter be filed in a district court having jurisdiction of juveniles which could punish him after finding him delinquent. The Court suggested that the finding of delinquency would be "pro forma" and would be based upon the Superior Court's determination, by acceptance of the plea, that Metcalf had committed an offense.

The decision by the Massachusetts Court was made after considering the acknowledged general rule that jurisdiction is determined at the outset of the proceeding. The rationale of the Court had two stated bases. The Court distinguished delinquency proceedings from criminal proceedings, apparently to avoid the clear double jeopardy implications of its proposal that Metcalf be subjected to punishment in delinquency proceedings after having been tried in a superior court. Reliance was also placed on the language of the Massachusetts Statute which limited the Superior Court's jurisdiction to serious offenses "committed" by the juvenile. Once it was determined that Metcalf had not "committed" first degree murder, then jurisdiction was lost. The decision was thus, in effect, that jurisdiction was determined by the result of the case rather than from the pleadings. The Court clearly rejected the majority position.

Neither of these bases can be used here. Much has changed in the treatment of juvenile offenders since 1959, including recognition of their constitutional rights in juvenile proceedings. *In Re Gault*, 387 U.S. 1 (1967). We can conceive of no possibility

of subjecting Walker to the power of another court without offending his right not to be placed twice in jeopardy. In addition, we are directly precluded from ordering transfer of this case by Ark. Code Ann. § 9-27-319 (1987) which provides: "No juvenile who has been tried for a violation of the criminal laws of this state shall be later subjected to a delinquency proceeding arising out of the facts which formed the basis of the criminal charges."

While the solution reached by the Massachusetts Court has the merit of carrying out the legislative intent that a juvenile found to have committed any offense other than those intended to receive "adult" punishment be punished through a delinquency proceeding rather than a criminal one, we cannot adopt it. The Statute with which we must deal does not permit the leeway the Massachusetts Court found. Counsel for Walker agreed in oral argument that, although he would very much like us to do it, this Court has no statutory authority whatever to order transfer of this case to a chancery court having jurisdiction of juvenile offenses, and he could cite no basis for our exercising "inherent authority" to do it. Again, our General Assembly has not based court assignment in juvenile cases upon the nature of the offense "committed" but upon what the prosecutor chooses to charge.

### 3. Legislative intent

In *Gray* v. *State, supra,* the Court of Special Appeals of Maryland was faced with a situation in which its circuit courts had exclusive jurisdiction of crimes punishable by death or life imprisonment, and juvenile courts were thus excluded from trying such cases. Gray was convicted of manslaughter after a trial on an indictment of a capital charge. After citing cases developing the majority rule on retention of jurisdiction, the Court discussed legislative intent as follows:

> The Circuit Court clearly had original, exclusive jurisdiction over the appellant on the capital charge which was contained in the indictment and we do not believe that the Legislature intended, after a full trial on the capital charge, to have such proceedings declared a nullity where a verdict of second degree murder or manslaughter is returned. We hold that in view of the statutory form of indictment here employed, under which the lower court lawfully acquired jurisdiction of the appellant on a capital

offense, it did not lose jurisdiction over the appellant, in this instance, by the jury's return of a verdict of manslaughter which was a lesser offense included in the statutory form of indictment. Accordingly we find no merit in the appellant's contention that the lower court was without jurisdiction to enter the judgments of manslaughter.

In its consideration of a problem like the one presented here, the Mississippi Supreme Court wrote:

> We think the sounder rule has been stated and followed in those states holding that once jurisdiction is acquired, it is not lost by accepting a plea to a lesser-included offense or conviction for a lesser-included offense, even though such offenses would not originally confer jurisdiction in the circuit court. It would be a mockery of the law and justice to hold that when a juvenile is indicted for murder that the circuit court must proceed with a trial on the murder charge, or lose jurisdiction, if a plea or conviction for a lesser-include offense occurs. In the present case, the circuit judge could have imposed a fine and jail sentence, or could have suspended the entire sentence. His powers are almost the same as those conferred upon the Youth Court.

*Williams* v. *State*, 459 So.2d 777 (Miss. 1984). We note that our circuit judges also have the power to reduce a sentence which has been imposed by a jury. Ark. Code Ann. § 16-90-107(e) (1987).

### 4. Conclusion

Given the legislative scheme for jurisdiction of juveniles in this State, the majority rule on retention of jurisdiction once it is established, which we have followed in civil cases, and the rationales expressed by this Court and the others cited, we hold the Circuit Court was not without jurisdiction to convict and sentence Walker for manslaughter.

In closing, we address Walker's contention that, if a circuit court is allowed to convict and sentence a juvenile of an offense which could not have been charged there independently, prosecutors will overcharge defendants for the purpose of defeating the jurisdiction of juvenile courts. This argument ignores the responsibility of a prosecutor to "refrain from prosecuting a charge that the prosecutor knows is not supported by probable

cause." Model Rule of Professional Conduct 3.8(a). We have been given no reason to conclude that prosecutors will attempt to flout the jurisdiction of the juvenile divisions of chancery courts. Even if one of them were so disposed, we doubt he or she would be willing to run the risk of being found guilty of an ethical violation under the Rule.

Affirmed.

CORBIN, J., dissents.

HOLT, C.J., not participating.

DONALD L. CORBIN, Justice, dissenting. The majority has a sound legal foundation for the position that the court takes. I dissent because I believe the result we reach goes against the strong public policy envisioned at the time of the proposal and the acceptance of the new juvenile court system by the people of the State of Arkansas.

I would follow the Massachusetts rule mentioned in the majority opinion. I would do so for reasons of strong public policy. I admit that this is judicial activism, but the situation deserves this attention unless we are to make a mockery out of our juvenile court system.