Tony Alan RAY *v.* STATE of Arkansas

CR 00-471 40 S.W.3d 243

Supreme Court of Arkansas
Opinion delivered March 8, 2001

*Fields, Tabor, Langston, & Shue, P.L.L.C.*, by: *Daniel Shue*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.

RAY THORNTON, Justice. Appellant, Tony Alan Ray, shot and killed Lisa G. Lewis in the course of burglarizing her home in Van Buren. A sixteen-year-old juvenile at the time of the crime, appellant was charged as an adult with capital murder, burglary, and theft of property, and he was sentenced by jury to life imprisonment without parole. On appeal, appellant argues that the trial court denied his motion for directed verdict based upon the insufficiency of the felony information. Appellant further argues that the trial court should have suppressed his inculpatory statement on the following grounds: (1) that his statement was obtained in violation of Ark. Code Ann. § 9-27-317(g)(2)(A)(ii) (Repl. 1998); (2) that his statement was made involuntarily, and (3) that he had not waived his right to speak to his parent, as prescribed by the above statute. We find no reversible error and affirm.

The sufficiency of the evidence to support a conviction on all counts is not challenged, and only a brief summary of the facts will be provided. On June 24, 1997, Van Buren police officers were called to the home of Lisa Lewis, where they found her dying of multiple gunshot wounds. After making a dying declaration, the victim was transported to the hospital, where she died later that same day. As a result of the victim's 911 call, appellant and his accomplice were arrested that day alongside Interstate 40 near Dora. Appellant and his accomplice were found in the victim's automobile, and they were taken to the Van Buren Police Department for questioning.

Detective Mick Molnar of the Van Buren Police Department interviewed appellant regarding the murder of Ms. Lewis. Before the interview, he contacted the prosecuting attorney, who informed the officer that appellant would be charged as an adult. During the questioning, the police officer followed procedures applicable to adults. He provided appropriate *Miranda* warnings and advised appellant of his right to consult an attorney, but the officer did not afford him the opportunity to talk with his parent, as provided for juveniles by Ark. Code Ann. § 9-27-317(g) (Repl.

1998). At a hearing on appellant's motion to transfer, the circuit judge stated that appellant was not afforded the benefit of juvenile rights because he was charged as an adult.

Appellant then filed an interlocutory appeal with the court of appeals. *Ray v. State*, 65 Ark. App. 209, 987 S.W.2d 738 (1999) ("*Ray I*"). Citing *Boyd v. State*, 313 Ark. 171, 853 S.W.2d 263 (1993), the court of appeals held that because appellant was prosecuted as an adult, he was subject to the same procedures as prescribed for adults. *Ray I, supra*. Following this appeal, the case was returned to the trial court, and as a result of a conviction of capital murder by the jury, appellant was sentenced to life imprisonment without parole. Appellant now brings an appeal from this judgment.

## I. Felony information

While the first point on appeal is couched as a denial of a motion for directed verdict, the thrust of the assertion of error is the caption of the felony information. Appellant was charged with capital murder, burglary as a class B felony, and theft of property. Count I of the information alleged that appellant and Hinkston, his accomplice, "during the commission of the offense of Burglary and in the course and furtherance of that felony, [caused] the death of Lisa G. Lewis under circumstances manifesting extreme indifference to the value of human life[.]" In Count II, the felony information charged that appellant committed the offense of burglary when he "did enter or remain unlawfully *in the residence* of Lisa G. Lewis with the purpose of committing the offense of Theft of Property. . ." (emphasis added). Count III of the information alleged that appellant did "take or exercise unauthorized control over the property, an automobile valued in excess of $2,500, of Lisa G. Lewis, with the purpose of depriving the owner thereof." Appellant never challenged the felony information before trial.

When appellant moved for a directed verdict at the end of the State's case-in-chief, appellant argued that the State failed to prove the offense of capital murder because there was no offense of "burglary" in Arkansas. He further argued that Arkansas distinguishes between the offenses of residential burglary and commercial burglary, and that the information was void for vagueness. Appellant's counsel stated:

> As to Count I, Capital Murder, our first motion for a directed verdict deals with the charge, itself. The information alleges that

during the commission of a burglary[,] it's the defense's position, that there is no charge of burglary in the State of Arkansas. When the legislature met in 1993, under Acts 442 and 552, they created the acts of commercial burglary and residential burglary. Those are the two criminal offenses in Arkansas. There is no criminal offense of burglary, anymore. For that reason, it is void for vagueness; that it does not apprize [sic] a person of ordinary intelligence of what the law in the State of Arkansas is, because there is no offense of burglary.

The State responded by stating that the felony information refers to residential burglary because the information refers to ·the act of entering and remaining "in the residence of Lisa G. Lewis" for the purpose of stealing property. The trial court denied appellant's motion. Appellant renewed his motion on the same grounds at the close of the evidence, and the court again denied his motion.

Here, appellant does not attack the sufficiency of the evidence to support a conviction, but argues that the offense was not properly captioned in the information. Appellant admits in his brief that "[t]here is no doubt that the State proved the elements of Residential Burglary[.]" Appellant draws a distinction between residential burglary and commercial burglary. See Ark. Code Ann. § 5-39-201(a)(1), (b)(1) (Repl. 1997). The felony information under which appellant was charged clearly states that appellant and his accomplice entered Ms. Lewis's residence and that the offense was a class B felony.

 A nonjurisdictional challenge to the sufficiency of an information must be raised prior to trial to be preserved for appellate review. McNeese v. State, 334 Ark. 445, 976 S.W.2d 373 (1998); Sawyer v. State, 327 Ark. 421, 938 S.W.2d 843 (1997). A directed-verdict motion is not a substitute for a timely-made motion to dismiss an allegedly insufficient information. See Williams v. State, 331 Ark. 263, 962 S.W.2d 329 (1998). Appellant's attempt to challenge the information was untimely, and more importantly, appellant could have requested that the State file an amended complaint prior to trial. For these reasons, we affirm the trial court's denial of appellant's directed-verdict motion.

## II. Arkansas Code Annotated § 9-27-317(g)(2)

We next address the question whether the provisions of Ark. Code Ann. § 9-27-317(g)(2)(A)(ii)[1] are applicable to a juvenile whom the prosecuting attorney has exercised his discretion to charge as an adult. This issue was raised during the interlocutory appeal in *Ray I, supra,* and was resolved on the basis of our holding in *Boyd v. State,* 313 Ark. 171, 853 S.W.2d 263 (1993), where we stated that the section of the juvenile code requiring parental consent to a waiver, found in Ark. Code Ann. § 9-27-317, is limited to proceedings in the juvenile division of chancery court. *Id.*

■ At the outset, we note that the prosecuting attorney has the discretion to decide whether charges brought against a sixteen-year-old shall be brought in juvenile court, or whether the offender shall be tried as an adult in circuit court. Ark. Code Ann. § 9-27-318 (Repl. 1998). The statute provides in relevant part:

> A circuit court and a juvenile court have concurrent jurisdiction and a prosecuting attorney may charge a juvenile in either court when a case involves a juvenile:
>
> (1) At least sixteen (16) years old when he engages in conduct that, if committed by an adult would be any felony . . . [.]

*Id.*[2] We have held that the General Assembly has not based court assignment in juvenile court upon the nature of the offense but upon what the prosecutor chooses to charge. *Walker v. State,* 309 Ark. 23, 827 S.W.2d 637 (1992).

■ The legislature has distinguished the rights of those juveniles charged as adults from the more expansive rights available in juvenile proceedings, and we have adopted the general rule that statutes expressing the rights of juveniles in juvenile court are not

---

[1] The statute was amended by Act 1192 of 1999, and the pertinent section of the statute is now designated as Ark. Code Ann. § 9-27-317(h)(2)(A)(ii) (Supp. 1999). Because the former designation of the statute was in effect at the time of the offense here, and because it is used in the record and in the briefs, we will use the former designation of the statute. The 1999 amendment did not alter the substance of this section of the statute.

[2] The statute was amended by Act 1192 of 1999, and the pertinent section of the statute is now designated as Ark. Code Ann. § 9-27-318(c)(1) (Supp. 1999). Because the former designation of the statute was in effect at the time of the offense here, and because it is used in the record and in the briefs, we will use the former designation of the statute. The 1999 amendment did not alter the substance of this section of the statute.

applicable to juvenile defendants being tried in circuit court. In *Misskelley v. State*, 323 Ark. 449, 915 S.W.2d 702 (1996), we stated:

> The legislature recognized in Ark. Code Ann. § 9-27-318(c) (Repl. 1993) that a juvenile over the age of sixteen may be prosecuted as an adult where his act would constitute a felony if committed as an adult. This is an acknowledgment that an older juvenile who commits a serious crime may not receive the protection of juvenile proceedings, but will face the consequences as an adult. The same rationale applies to the statute at hand. *A juvenile over the age of sixteen who commits a crime that would subject him to adult punishment will not be accorded the protection of full parental involvement in the interrogation process.*

*Id.* (emphasis added).

■ We have also held that the Arkansas Juvenile Code does not refer to proceedings in circuit court, but rather, it applies only to proceedings in juvenile court. *Ring v. State*, 320 Ark. 128, 894 S.W.2d 944 (1995). In *Ring, supra*, we affirmed the denial of the juvenile's motion to transfer, and in determining whether the protections of Ark. Code Ann. § 9-27-317(f) were afforded to the juvenile in that case, we concluded:

> In *Boyd* [*v. State*, 313 Ark. 171, 853 S.W.2d 263 (1993)], this court stated that *when a prosecutor chooses to prosecute a juvenile in circuit court as an adult, the juvenile becomes subject to the procedures and penalties prescribed for adults.* . . . [T]he failure of the law enforcement officers to obtain the consent of appellant's parents to his waiver of right to counsel, as required by section 9-27-317, does not bar admission of appellant's confession.

*Id.* (emphasis added).

Applying these well-established principles to the present case, the prosecutor had the authority and the discretion to charge and try appellant as an adult. Before Detective Mick Molnar began any questioning, he called the prosecuting attorney to find out whether he should follow the procedures applicable to juvenile cases, or whether he should treat appellant as an adult. At the suppression hearing, Detective Molnar testified that, before he interviewed appellant, the deputy prosecutor informed him that appellant would be charged as an adult. Detective Molnar testified:

I did not know how old the defendant was at that time. He was approximately fifteen, sixteen. That was a factor that I was concerned about, as far as going through correct procedures. When I knew that I would be interviewing Mr. Ray, I had contacted the prosecutor's office. I wanted to make sure because of the nature of the crime if we were going to use a juvenile rights form or adults rights form.

There's a difference between the two forms. With the juvenile rights form, the person is allowed to speak with his parents prior to any questioning. The parents also sign the form. I was advised that Tony Ray was going to be charged as an adult, with his past history, the nature of the crime. Prosecutor McCune of the prosecutor's office advised me of that.

Detective Molnar further testified, "If the subject was being charged as a juvenile and says they want to speak to their parents, then I would have stopped questioning at that point. . . . I clearly understood that he did request to speak to his father before I got into what I would call the gist of the interview." As a result of the prosecuting attorney's exercise of his discretion to charge appellant as an adult, Detective Molnar used the adult form, as opposed to the juvenile form, during his questioning, and despite appellant's requests to see his father, Detective Molnar denied those requests because he was advised that appellant would be tried as adult. The detective testified that if he had thought that appellant would have been tried as a juvenile, he would have stopped his line of questioning.

■ Our inquiry now turns to the question whether appellant, who was charged as an adult, had the right to have his parent present during his custodial interrogation. The United States Supreme Court has held that a juvenile only has a constitutional right to speak to an attorney during questioning. *Fare v. Michael C.*, 442 U.S. 707 (1979) (holding that a juvenile does not have a constitutional right to speak to his probation officer). Although it is not required by the Constitution, the Arkansas General Assembly has given juveniles the statutory right to speak to a parent or guardian or to have one present during questioning, pursuant to Ark. Code Ann. § 9-27-317(g)(2)(A)(ii). The statute provides in pertinent part:

(2)(A) No law enforcement officer shall question a juvenile who has been taken into custody for a delinquent act or criminal offense if the juvenile has indicated in any manner that he:

\* \* \*

> (ii) Wishes to speak with a parent or guardian or to have a parent or guardian present[.]

*Id.* We have also held that police officers are not required to inform juveniles of this statutory right under Ark. Code Ann. § 9-27-317(g)(2)(A)(ii). *Miller v. State,* 338 Ark. 445, 994 S.W.2d 476 (1999).

The fundamental issue here is whether the statutory right to have a parent present during questioning extends to juveniles in both circuit and juvenile courts. In prior case law, we have made some observations as to the possible extension of Ark. Code Ann. § 9-27-317(g)(2) to circuit court proceedings. In *Conner v. State,* 334 Ark. 457, 978 S.W.2d 300 (1998), a case in which a seventeen-year-old juvenile was tried as an adult, the question was whether the trial court should have suppressed his statements to the police because his mother did not consent to his waiver of his right to counsel. We affirmed the trial court's ruling that Conner's statements should not be suppressed because "there [was] no evidence that Conner himself invoked his statutory right to have a parent or guardian present during questioning." *Id.* We made it clear that the rights provided in the subsection must be exercised by the juvenile, and held that the juvenile had not attempted to exercise the statutory rights set forth in Ark. Code Ann. § 9-27-317(g)(2):

> No law enforcement officer shall question a juvenile who has been taken into custody for *a delinquent act or criminal offense* if the juvenile has indicated in any manner that he . . . [w]ishes to speak with a parent or guardian or to have a parent or guardian present.

*Conner, supra.* Although it was not necessary for the disposition of the case, we then observed in *obiter dictum* that "a juvenile has the right to speak to a parent or have a parent present during questioning in *juvenile and criminal proceedings." Id.* (emphasis added).

The statutory right afforded under Ark. Code Ann. § 9-27-317(g)(2) was not an issue in *Conner, supra,* and was not raised by either Conner or his mother. While Conner's mother, not a party to the proceedings, complained that she was not allowed to speak to her son, her complaint was addressed to the issue of coercion and the voluntary nature of the incriminating statements made by Conner. *Id.*

The observation in *Conner, supra* that Ark. Code Ann. § 9-27-317(g)(2) would have given Conner the right to have a parent present, if he had made that request, was based upon *Isbell v. State,* 326 Ark. 17, 931 S.W.2d 74 (1996), where we specifically declined to determine whether the provisions of Ark. Code Ann. § 9-27-317(g)(2) applied to adult proceedings. We said: "If the provisions of subsection (g) apply beyond the juvenile forum, they were not involved here." *Isbell, supra.* In *Conner,* the issue was decided by pointing out that appellant had not requested to talk with his parents, and that his mother had no standing to invoke the provisions of Ark. Code Ann. § 9-27-317(g)(2). Nevertheless, we made the observation in *obiter dictum* that "a juvenile has the right to speak to a parent or have a parent present during questioning in *juvenile and criminal proceedings.*" *Conner, supra* (emphasis added).

■ This observation, suggesting that Ark. Code Ann. § 9-27-317(g)(2) should apply to criminal proceedings, is based upon an interpretation of the phrase, "taken into custody for a *delinquent act or criminal offense,*" in *Conner, supra,* as a reflection of legislative intent that this statute should apply to criminal proceedings in adult cases. However, both juvenile courts and circuit courts have concurrent jurisdiction over *a delinquent act and criminal offense* when a sixteen-year-old juvenile commits a felony. *See* Ark. Code Ann. § 9-27-318(b)(1). Secondly, this concurrent jurisdiction does not require that all *criminal offenses* be tried in circuit court. In fact, the statute provides that the trial of *delinquent acts and criminal offenses* may be transferred from one court to another. *See* Ark. Code Ann. § 9-27-318(c)-(e). Third, the prosecuting attorney has discretion to decide whether such a criminal offense is to be tried in juvenile court or in circuit court under Ark. Code Ann. § 9-27-318(c), and in the case before us, the prosecutor had exercised his discretion to try appellant as an adult before any interrogation began.

The dissent contends that this observation in *Conner, supra,* must be accorded the full weight of *stare decisis* in interpreting Ark. Code Ann. § 9-27-317(g)(2), but does not deal with the long line of precedent in which we have clearly and directly held that a juvenile charged as an adult is subject to the procedures applicable to adults. *Ring, supra; see also Misskelley, supra.* The dissent also calls our attention to another distinction between *Conner, supra,* and this case: "[a]fter giving a statement to police officers, he [Conner] was charged as an adult . . . [.]" Unlike the facts presented in *Conner, supra,* the prosecuting attorney in this case had already exercised his discretion to charge appellant as an adult *before* any statement was given.

■ We have consistently held that the provisions of the juvenile code are not applicable to adult proceedings in circuit court. Our interpretation limiting the effect of Ark. Code Ann. § 9-27-317 to juveniles has been in effect for many years. The legislature has had the opportunity to extend this right to adult proceedings, but it has not done so. We are not called upon to reverse our holding in *Conner, supra*, but only to correct an *obiter dictum* observation about the interpretation of Ark. Code Ann. § 9-27-317(g)(2). We hold that the provisions of Ark. Code Ann. § 9-27-317(g)(2) are applicable only to matters being considered by the juvenile court. Denying a sixteen-year-old, whom the prosecuting attorney chose to charge as an adult, a right applicable only to juvenile proceedings was not in error.

### III. Voluntariness of appellant's statement

Appellant argues that his statements should have been excluded as involuntary because Detective Molnar made a false promise to him. He first made this assertion in his argument at the close of the suppression hearing. During the first interview at 6:20 p.m. on the evening of June 24, 1997, the following colloquy occurred:

> APPELLANT: I mean I just wanted to get out of my house. I don't like it there.
>
> DETECTIVE MOLNAR: Things bad at your house? Is that why you did this?
>
> APPELLANT: I can't tell no one. I don't know. I just don't want to live there.
>
> DETECTIVE MOLNAR: Why?
>
> APPELLANT: I just don't.
>
> DETECTIVE MOLNAR: Is someone beating on you or hurting you?
>
> APPELLANT: It's a long story.
>
> DETECTIVE MOLNAR: Well, I've got time if you want to talk about it. Do you want to talk about it? I mean now, Tony, I'm here to help you, too, if I can, okay?

APPELLANT: Yeah, but I didn't know that I'd go to prison for this stuff though.

DETECTIVE MOLNAR: Tony, if you break the law, you know. You can't keep breaking the law and breaking the law and breaking the law and expecting nothing to happen.

APPELLANT: I know, but —

DETECTIVE MOLNAR: You [*sic*] sixteen. You're almost an adult, you know. You're not a dummy. I think you know exactly what's going on. But, good gosh, man, I mean sometime in your life you have to be responsible and take responsibility for your actions. You know the best thing is what you're doing now, is standing up and taking responsibility for what happened. You know, let's get this behind you and get it taken care of. That's what we're doing here. But if there's a problem and something is going on at home and if you want to talk to me about that, that's fine. You know I'll do whatever I can to help you. If you don't want to talk to me now about it and if you want to talk to me at a later date you can call down here at the police department and meet you somewhere and talk to you.

APPELLANT: So, I don't have talk about that right now?

DETECTIVE MOLNAR: If you don't want to. it's up to you, but I'm giving you that opportunity if you'd like to. Would you like to do that?

APPELLANT: I just would rather wait.

 In reviewing the voluntariness of a confession, we "make an independent review of the totality of the circumstances and reverse only if the trial court's finding is clearly against the preponderance of the evidence." *Hurst v. State*, 296 Ark. 448, 757 S.W.2d 558 (1988); *Sherrer v. State*, 294 Ark. 287, 742 S.W.2d 884 (1988). The credibility of the witnesses who testify to the circumstances surrounding the defendant's custodial statement is for the trial court to determine. *Porchia v. State*, 306 Ark. 443, 815 S.W.2d 926 (1992); *Smith v. State*, 286 Ark. 247, 691 S.W.2d 154 (1985).

 We find no error in the trial court's finding that Detective Molnar did not promise appellant leniency for confessing that he had shot the victim. In fact, the above exchange occurred after appellant had confessed to shooting the victim. It appears that

Detective Molnar, in his offer to help, referred to appellant's alleged abuse in his home. Appellant declined to discuss the "long story," and the trial court did not err in finding that he was not enticed to speak to Detective Molnar by any alleged promise made to appellant. Appellant failed to show that a false promise was made in connection with any proposal of lenient treatment in exchange for a statement, and therefore, we affirm the trial court's ruling.

### *IV. Waiver of rights*

At the end of the suppression hearing, appellant claimed that his statements to Detective Molnar should have been suppressed because he was not advised of his right to have his parents present under Ark. Code Ann. § 9-27-317 when he spoke with Detective Molnar. Appellant now argues that because he was not advised of this right, he did not validly waive his rights.

■ We have addressed these considerations under appellant's second point on appeal. The right to have a parent present during questioning is a statutory right and not a constitutional right. *Miller, supra.* Thus, this statutory right is not a part of the *Miranda* warnings, and we have held that the police do not have a duty to inform the juvenile of such right. *Miller, supra.* Because appellant was charged as an adult in circuit court, the police were not required to stop questioning until a parent was present or to obtain parental consent to appellant's waiver of his right to counsel. *Isbell, supra.* Appellant's attempt to reargue this point is unavailing, and we affirm the trial court's ruling.

### *V. Rule 4-3(h)*

In accordance with Ark. Sup. Ct. R. 4-3(h) (1998), the record has been reviewed for all objections, motions, and requests made by either party that were decided adversely to appellant, and no reversible errors were found. Accordingly, we affirm appellant's judgment of conviction and sentence imposed.

Affirmed.

CORBIN, BROWN, and IMBER, JJ., dissent.

ROBERT L. BROWN, Justice. On October 8, 1998, this court interpreted Ark. Code Ann. § 9-27-317(g)(2)

(Repl. 1998), to require that when a juvenile requests to speak with a parent while in custody for a criminal offense, that request must be granted. *See Conner v. State*, 334 Ark. 457, 982 S.W.2d 655 (1998).[1] In *Conner*, the 17-year-old boy involved, Corey Jermo Conner, had been taken into custody, and his mother asked to speak to him. The request was denied. Conner never made a similar request to speak to his parents. After giving a statement to police officers, he was charged as an adult with capital murder, convicted, and sentenced to life imprisonment without parole. We said in *Conner* as part of our holding:

> In contrast, Ark. Code Ann. § 9-27-317(g)(2) provides that, "[n]o law enforcement officer shall question a juvenile who has been taken into custody for *a delinquent act* or *criminal offense* if the juvenile has indicated in any manner that he ... [w]ishes to speak with a parent or guardian or to have a parent or guardian present" (emphasis added). Thus, unlike the right to parental consent to a waiver, a juvenile has the right to speak to a parent or have a parent present during questioning in juvenile and criminal proceedings. *See Isbell v. State*, 326 Ark. 17, 931 S.W.2d 74 (1996). The juvenile, however, and not the parent or guardian must invoke this statutory right. *Id.* Although there is evidence in the record that Conner's mother requested to speak to her son, there is no evidence that Conner himself invoked his statutory right to have a parent or guardian present during questioning. Accordingly, we find no merit to this point on appeal.

334 Ark. at 465-66, 982 S.W.2d at 659.

We, thus, made it clear in *Conner* in no uncertain terms that under § 9-27-317(g)(2), a juvenile had the right to speak to a parent during questioning, whether the resulting proceeding was a delinquency proceeding in juvenile court or a felony trial in circuit court. In other words, the right to call a parent exists regardless of whether the juvenile is ultimately tried as a juvenile or an adult. We even italicized "a delinquent act" or "criminal offense" in *Conner* to emphasize the point. Interpreting the statute as we did was a necessary part of our holding. Had Conner's rights under § 9-27-317(g)(2) not been available when he was charged as an adult, there was no reason for us to hinge our decision on his failure to ask to speak to a parent.

---

[1] Act 1192 of 1999 redesignated § 9-27-317(g) as § 9-27-317(h).

Tony Alan Ray, in contrast, did ask to speak to his father at the beginning of his interrogation, and that statutory right was denied him. Now, two and a half years later, the majority reverses itself and backs up on our statutory interpretation in *Conner*. In doing so, the majority says that our statutory interpretation which was essential to our holding on one issue was only an "observation." I cannot agree to retract our decision in *Conner* in this case which raises the same issue. This court's statutory interpretation is precedent for the trial courts of this State as well as the court of appeals. We, of course, have the right to overrule our decisions but to do so in this case undercuts the stability of our common law and leads to decisions which are made on a case-by-case basis.

This court has been eloquent in discussing our adherence to precedence and the doctrine of *stare decisis*:

> Precedent, it is said, should not implicitly govern, but discreetly guide. The policy of adhering to precedent, or the doctrine of *stare decisis*, is fundamental to the common law. Precedent governs until it gives a result so patently wrong, so manifestly unjust, that a break becomes unavoidable. The court in *Parish* [ *v. Pitts*, 244 Ark. 1239, 429 S.W.2d 45 (1968)], setting out the test for determining whether a case should be overruled, stated the following:
>
> > Having determined as we have here that a rule established by precedent no longer gives a just result it must then be determined whether the rights of those who have justifiably relied upon the established precedents are of greater weight in this case than that the rule be corrected. The test is whether it is more important that the matter remain settled than that it be settled correctly.
>
> In more recent decisions, this court has stated that there is a strong presumption of the validity of prior decisions. The court in *Sanders v. County of Sebastian*, 324 Ark. 433, 922 S.W.2d 334 (1996), stated:
>
> > While we do have the power to overrule a previous decision, it is necessary, as a matter of public policy, to uphold prior decisions unless a great injury or injustice would result. The United States Supreme Court has recognized that adherence to precedent promotes stability, predictability, and respect for judicial authority.

*McGhee v. State*, 334 Ark. 543, 545-46, 975 S.W.2d 834, 835 (1998) (internal citations omitted).

The *Conner* decision has been part of our common law for only two and a half years. The General Assembly did not see fit to pass legislation to overturn *Conner* in the 1999 session, which it readily could have done if it considered our interpretation in *Conner* to be contrary to legislative intent. We have said that this may be some indication of tacit approval of our decision by that body. *See, e.g., Chamberlin v. State Farm Mut. Auto Ins. Co.*, 343 Ark. 392, 36 S.W.3d 281 (2000); *Chapman v. Alexander*, 307 Ark. 87, 817 S.W.2d 425 (1991).

In response to this dissent, the majority opinion continues to confuse waiver of a juvenile's right to counsel without parental consent and a juvenile's right to speak to a parent. Identical Acts 67 and 68 of 1994 repealed the parental waiver requirement but then added the juvenile's right to speak to a parent regardless of whether the questioning related to a *delinquent act* or *criminal offense* (§ 9-27-317(g)(2)). The majority's confusion is compounded by its continued citation to *Misskelley v. State*, 323 Ark. 449, 915 S.W.2d 702 (1996); *Ring v. State*, 320 Ark. 128, 894 S.W.2d 944 (1995); and *Boyd v. State*, 313 Ark. 171, 853 S.W.2d 263 (1993), all of which dealt with parental waiver which now has been repealed. None of these cases concern the new right inserted in Acts 67 and 68 to speak to a parent. Our decision in *Conner v. State, supra*, makes this distinction clear.

Unbelievably, the majority, again in response to the dissent, asserts that our statutory interpretation in *Conner* was mere *dictum* and had no precedential value. If this court had believed that, why did we address the issue of a juvenile's right to speak to a parent in the first place? It would have been a simple matter to have merely held that the right does not attach if the juvenile is charged as an adult. We did not do that. Instead, we held: "Thus, unlike the right to parental consent to a waiver, a juvenile has the right to speak to a parent or have a parent present during questioning in juvenile and criminal proceedings." *Conner*, 334 Ark. at 465, 982 S.W.2d at 659. We then held in *Conner* that the son had to invoke the right — not the mother, and because the son did not ask to speak to a parent, the point on appeal had no merit.

What is now inescapable is that the right to speak to a parent is afforded a juvenile whether the matter ultimately ends up in juvenile court or circuit court. Identical Acts 67 and 68 of 1994 provide that, and our decision in *Conner* drives the point home.

I would adhere to precedent and exclude the two statements given by Ray where he invoked his statutory rights. To do otherwise runs directly contrary to our pronouncements on *stare decisis*. I respectfully dissent.

CORBIN and IMBER, JJ., join.