Mervin JENKINS *v.* STATE of Arkansas

CR 01-081

75 S.W.3d 180

Supreme Court of Arkansas
Opinion delivered May 16, 2002

[Petition for rehearing denied June 20, 2002]

688

*Tom M. DeMers*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.

ANNABELLE CLINTON IMBER, Justice. Appellant Mervin Jenkins appeals his conviction for the capital murder of twenty-year-old Brian Young. A jury convicted Mr. Jenkins of capital murder and sentenced him to life imprisonment without the possibility of parole. Mr. Jenkins raises four points on appeal: (1) there was not sufficient evidence to support his conviction; (2) he was denied effective assistance of counsel in violation of his Sixth Amendment rights; (3) the trial court erred in refusing to suppress his custodial statement; and (4) the trial court erred in denying his request for a mistrial. Our jurisdiction of this appeal is pursuant to Ark. Sup. Ct. R. 1-2(a)(2). We find no error and affirm.

The record reveals that Brian Young was murdered on September 24, 1997. Trial testimony from Brian Young's girlfriend,

Iris Northrop, indicated that, on the evening of the murder, Mr. Young was talking with her on a payphone outside a Delta convenience store located on Asher Avenue. In the middle of their conversation, the victim stated, "That looks like the guys that tried to jump on me earlier." Ms. Northrop then heard seven shots and heard the victim yell. An autopsy revealed that the cause of Mr. Young's death was seven gunshot wounds "from the back to the front."

Tanisha Franklin testified that she came into contact with Mr. Jenkins on September 24 at the home of Lisa Bowman, Mr. Jenkins' girlfriend at the time. According to Ms. Franklin, she heard Mr. Jenkins bragging about shooting Brian Young at the Delta station and swearing Ms. Bowman to secrecy. Ms. Franklin also heard Mr. Jenkins say that he shot Mr. Young six times in the back and that it was "a Crip putting it on a Blood."

On December 26, 1997, Mr. Jenkins was brought into the Little Rock police station in connection with an aggravated robbery and battery. At the time of his arrest, Mr. Jenkins was in the tenth grade at Central High School. While in custody, he was questioned regarding the September 24, 1997 murder of Brian Young, and he gave a taped statement to police in which he admitted to shooting at Brian Young with a .38 caliber revolver. In his statement, Mr. Jenkins said that he had some problems with Brian Young that began when he started dating Lisa Bowman. He told police about an occasion on which he was riding his bicycle and saw Mr. Young pointing his finger "like . . . I'm gonna mess you up or I'm gonna shoot you or something like that." About one week after that incident, on September 22 or 23, Mr. Jenkins was riding his bicycle near 17th and Schiller when a car pulled up near him and someone started shooting. Mr. Jenkins told police that, on the following night, he rode his bicycle to the Delta store by Asher where he saw "[Mr. Young] up there at the pay phone." Mr. Jenkins stated: "[He] gave me a real you know what I'm saying, nasty look like — I fixing to get out and shoot you or something like that — a real you know crazy look so I just started shooting at him." After firing three or four shots, Mr. Jenkins ran away and threw the revolver into the river.

In his statement, Mr. Jenkins indicated that he did not go to Lisa Bowman's home on the night of the shooting; but, in a statement given on September 25, Lisa Bowman told police that Mr. Jenkins did come to her house that night around 10:00 p.m. Ms. Bowman stated that she was asleep when he arrived and that he woke her up. She then went back to sleep. Mr. Jenkins was at her home when she awoke the next morning; however, she admitted that she did not know if Mr. Jenkins left during the night.

A felony information charging Mr. Jenkins with capital murder was filed on April 13, 1998.[1] Subsequently, the defense requested a mental evaluation of Mr. Jenkins. A forensic psychiatric evaluation conducted by Dr. Alan Newman at the Arkansas State Hospital showed that Mr. Jenkins had a severe conduct disorder and "borderline intellectual functioning" due to his IQ of 75. Dr. Newman nonetheless concluded that Mr. Jenkins was aware of the charges against him and capable of cooperating effectively with his attorney. Dr. Newman further concluded that, at the time of the commission of the alleged offense, Mr. Jenkins did not lack the capacity to appreciate the criminality of his conduct or to conform his conduct to the law.

Initially, Mr. Jenkins filed a motion for transfer to juvenile court. After the trial court denied his motion, Mr. Jenkins filed an interlocutory appeal. The trial court's ruling was affirmed by the Arkansas Court of Appeals. *Jenkins v. State*, CA CR 99-693 (Ark. App. Dec. 15, 1999). Mr. Jenkins also filed a motion to suppress his custodial statement. That motion was likewise denied. He proceeded to trial on May 9, 2000, when a jury found him guilty of capital murder and sentenced him to life imprisonment without the possibility of parole.

On June 7, 2000, the trial court granted Mr. Jenkins's request that the public defender be relieved as counsel and that Tona DeMers be substituted as retained counsel for Mr. Jenkins. His new attorney then filed a motion for new trial based upon ineffective assistance of counsel. Attached to the motion for new trial

---

[1] According to an amended felony information, Mr. Jenkins was charged as a habitual offender.

was a statement given to the police by Johnny Williams on September 26, 1997. According to this statement, Mr. Williams told police he had information that his vehicle was involved in the September 24 shooting on Asher Avenue. He stated that, on Sunday morning, September 21, he loaned his vehicle to an individual he knew only as "B.A." Mr. Williams advised police that "B.A." was in possession of a weapon with a clip at that time. The next day, Mr. Williams filed a report claiming that his vehicle, a white GMC Jimmy with blue, factory pin-stripes, was being driven without his consent. Mr. Williams would not tell police what information led him to believe that his vehicle was involved in Mr. Young's murder.

Also attached to Mr. Jenkins's motion for new trial was the signed statement of Chris Johnson. This statement was given to the police on September 25, 1997. According to Mr. Johnson, he was in his home near the area of the shooting on September 24. He heard shots around 11:40 p.m., and looked out his window to see a blue short-bed pick-up truck with tinted windows leaving the area from which he heard the shots.

Following a hearing on Mr. Jenkins's motion for a new trial, the trial court entered an order denying his request for a new trial. On appeal, Mr. Jenkins challenges both his capital murder conviction and the trial court's denial of his motion for new trial.

## I. Sufficiency of the Evidence

This court treats a motion for directed verdict as a challenge to the sufficiency of the evidence. *McGehee v. State*, 338 Ark. 152, 992 S.W.2d 110 (1999). When reviewing the sufficiency of the evidence, we determine whether there is substantial evidence to support the verdict, viewing the evidence in a light most favorable to the State. *Id.* The evidence to support a conviction, whether direct or circumstantial, must be of sufficient force and character that it will, with reasonable and material certainty and precision, compel a conclusion one way or the other. *Smith v. State*, 308 Ark. 390, 824 S.W.2d 838 (1992). It must force the mind to go beyond speculation or conjecture and is not satisfied by evidence which gives equal support to inconsistent

inferences. *Id.* We look only to the evidence which supports the verdict. *Id.* It is for the jury to resolve inconsistencies in testimony, and we will not disturb their credibility assessment. *Ellis v. State*, 279 Ark. 430, 652 S.W.2d 35 (1983).

■ ■ Mr. Jenkins moved for a directed verdict at the close of the State's case. He presented no evidence and rested immediately after the State. On appeal, he contends that the State did not exclude every other reasonable hypothesis except for his guilt, claiming that the State provided no proof that he acted with premeditation and deliberation as well as insufficient evidence that he murdered Brian Young. First, Mr. Jenkins contends that the testimony of Tanisha Franklin should have been corroborated. He focuses on the fact that Ms. Franklin did not tell police about overhearing him admit to Mr. Young's murder until December 26 when she was arrested with Mr. Jenkins on charges of aggravated robbery. The charges against her were eventually dropped. Mr. Jenkins asserts that this likened Ms. Franklin to an accomplice whose testimony should have been corroborated. However, the appellant bears the burden of proving that a witness is an accomplice whose testimony must be corroborated. *McGehee v. State*, 338 Ark. 152, 992 S.W.2d 110. A defendant must either have a trial court declare a witness to be an accomplice as a matter of law or submit the issue to the jury for determination. *Id.* Here, there was no request by Mr. Jenkins that the trial court declare Ms. Franklin to be an accomplice; nor did he seek to have the issue submitted to the jury. Thus, this challenge to her testimony is not preserved for our review.

■ ■ Mr. Jenkins also asserts that his taped confession statement is not reliable. A confession made by a defendant, unless made in open court, will not warrant a conviction, unless accompanied with other proof that the offense was committed. *Tinsley v. State*, 338 Ark. 342, 993 S.W.2d 898 (1999). *See* Ark. Code Ann. § 16-89-111(d) (Supp. 2001). This requirement for other proof, sometimes referred to as the corpus delicti rule, mandates only proof that the offense occurred and nothing more. *Id.* Under the corpus delicti rule, the State must prove the existence of an injury or harm constituting a crime and that the injury or harm was caused by someone's criminal activity. *Id.* Here, the

victim's body and the physical evidence found at the scene establish the crime of murder. The victim sustained seven gunshot wounds "from the back to the front."

█ As a part of his sufficiency challenge, Mr. Jenkins denies that his statement amounted to a confession. He claims that, during police questioning, the premise was usually contained in the detective's questions rather than in his answers. He also asserts that, though he admitted to shooting at Mr. Young in response to perceived acts of aggression, he did not admit to killing him. In addition, Mr. Jenkins points out that Lisa Bowman stated Mr. Jenkins was at her home on the night of the murder, whereas he told police that he did not go to Ms. Bowman's home after the shooting. We do not consider these arguments as we need only consider the evidence that supports the guilty verdict. *Leaks v. State*, 345 Ark. 182, 45 S.W.3d 363 (2001). The evidence supporting the verdict revealed (1) that Mr. Jenkins admitted firing three to four shots at Mr. Young while the victim was outside a Delta convenience store on Asher Avenue, and (2) that Mr. Young died at that location as a result of multiple gunshot wounds.

Next, Mr. Jenkins asserts that the State did not produce a murder weapon. Mr. Jenkins admitted shooting at Mr. Young with a .38 caliber revolver, and now contends such a revolver only contains six shots. He alleges that Brian Young was shot seven times with a 9mm semi-automatic handgun. In addition, he contests the identity of the assailant who committed the murder. He points out Iris Northrop's testimony that Mr. Young's last words to her were: "[t]hat looks like the guys that tried to jump on me earlier," focusing on the reference to multiple assailants and the lack of reference to Mr. Jenkins himself. Mr. Jenkins suggests that Mr. Young knew who he was and, yet, did not identify him to Iris Northrop as the assailant. Mr. Jenkins also refers the court to his statement indicating that he committed the shooting while alone and riding a bike. He then contends it is unlikely that he could have hit the victim seven times while riding a bicycle. Again, we do not consider these arguments as we need only consider the evidence that supports the guilty verdict. *Leaks v. State*, 345 Ark. 182, 45 S.W.3d 363.

■ ■ As for proof of the premeditated and deliberate intent necessary for capital murder, the State points out that a criminal defendant's intent or state of mind is seldom capable of proof by direct evidence and must usually be inferred from the circumstances of the crime. *Leaks v. State*, 345 Ark. 182, 45 S.W.3d 363. Intent may be inferred from the type of weapon used, the manner of its use, and the nature, extent, and location of the wounds. *Id.* In this case, the evidence revealed that Mr. Young died while standing at a payphone near a convenience store and talking to his girlfriend. His death was the result of seven gunshot wounds to the back made with the equivalent of .38 caliber caliber-class bullets. The crime scene was littered with 9mm shell casings. In this case, the jury could have used those circumstances to infer that Mr. Jenkins acted with premeditated and deliberate intent.

■ ■ Finally, Mr. Jenkins argues that information in the police file provides him an alibi and a strong suspect other than himself. These allegations were not before the court during the trial of this matter. The failure to challenge the sufficiency of certain evidence in a directed-verdict motion at trial precludes appellate review. *See Hutts v. State*, 342 Ark. 278, 28 S.W.3d 265 (2000). As the evidence in question was not raised at trial, it cannot now be considered in relation to the sufficiency of the evidence on appeal.

■ ■ Overall, the evidence shows that Mr. Jenkins admitted to firing shots at the victim near the location where the victim's death occurred. In addition, testimony from Tanisha Franklin indicated that she heard Mr. Jenkins confess to murdering Mr. Young at the Delta store on the night of the crime. The jury alone determines what weight to give the evidence, and may reject it or accept all or any part of it they believe to be true. *Williams v. State*, 347 Ark. 728, 67 S.W.3d 548 (2002). Viewing the evidence in a light most favorable to the State, we hold that the evidence presented at trial was sufficient to sustain Mr. Jenkins' capital-murder conviction.

## II. *Ineffective Assistance of Counsel*

In his motion for new trial, Mr. Jenkins argued that his trial counsel was ineffective. To prevail on a claim of ineffective assistance of counsel, the petitioner must first show that counsel's performance was deficient. *Farmer v. State*, 321 Ark. 283, 902 S.W.2d 209 (1995) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.* Second, the petitioner must show that the deficient performance prejudiced the defense, which requires showing that counsel's errors were so serious as to deprive the petitioner of a fair trial. *Id.* Unless a petitioner makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Id.* A court must indulge in a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance. *Id.* The petitioner has the burden of overcoming that presumption by identifying the acts and omissions of counsel which, when viewed from counsel's perspective at the time of trial, could not have been the result of reasonable professional judgment. *Wainwright v. State*, 307 Ark. 569, 823 S.W.2d 449 (1992).

Even if counsel's conduct is shown to be professionally unreasonable, the judgment must stand unless the petitioner demonstrates that the error had a prejudicial effect on the actual outcome of the proceeding. *Id.* The petitioner must show there is a reasonable probability that, but for counsel's errors, the factfinder would have had a reasonable doubt respecting guilt, i.e., the decision reached would have been different absent the errors. *Farmer v. State*, 321 Ark. 283, 902 S.W.2d 209. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id.* In making a determination on a claim of ineffectiveness, the totality of the evidence before the judge or jury must be considered. *Id.*

For his second point on appeal, Mr. Jenkins contends that his trial counsel was ineffective for failing to contact a potential alibi witness and for failing to contact two other poten-

tial witnesses in pursuit of a lead on another suspect. He first alleges that trial counsel was ineffective for failing to call Lisa Bowman, who could have testified at trial to a potential alibi. At the new trial hearing, Mr. Jenkins' trial counsel admitted he did not interview Ms. Bowman. However, due to her statement in the police file, he knew what her recollection of the night in question would be. Brian Young's murder occurred shortly before midnight on September 24. Ms. Bowman's statement indicated only that she saw Mr. Jenkins near 10:00 p.m. that night and again the next morning. She had no knowledge of whether he left her house during that time frame. Thus, contrary to Mr. Jenkins's claim, Ms. Bowman's statement did not provide him with an alibi. Trial counsel testified that he did not call Ms. Bowman for reasons of trial strategy. In view of the fact that Mr. Jenkins confessed to shooting at Mr. Young and denied going to Ms. Bowman's house on the night of the shooting, trial counsel feared that calling Ms. Bowman to testify as to an alibi would inflame the jury. Trial counsel testified that his theory of the defense was to admit that Mr. Jenkins had killed the victim and attempt to get a conviction on a lesser degree of homicide. According to trial counsel, he discussed his strategy with Mr. Jenkins, who approved it. This court has held that an attorney's decision not to call a particular witness is largely a matter of professional judgment. *Lee v. State*, 343 Ark. 702, 38 S.W.3d 334 (2001). We have held that Rule 37 appeals asserting ineffective assistance of counsel do not provide a forum to debate trial tactics or strategy, even if that strategy proves improvident. *Id.* As such, we hold that Mr. Jenkins's counsel was not deficient in failing to call Lisa Bowman.

 In his next claim based on ineffective assistance of counsel, Mr. Jenkins alleges that his trial counsel failed to pursue a lead on another suspect implicated by the statements of Johnny Williams and Chris Johnson or to call those witnesses at trial. He argues that his case is similar to that of *Henderson v. Sargent*, 926 F.2d 706 (8th Cir. 1991). In *Henderson*, the United States Court of Appeals for the Eighth Circuit found counsel to be ineffective for failing to interview witnesses in connection with the pursuit of evidence implicating another suspect. *Id.* However, in that case, there was substantial evidence that at least 3 other specific and

named individuals had motive, opportunity, and ability to kill the victim. The defendant's counsel had access to the information but failed to investigate the possibility of these other suspects; thus, none of the other evidence was presented at his trial. *Id.* In addition, the defendant had recanted his confession, thereby leaving counsel free to pursue other theories of the case.

In this case, however, trial counsel had to plan his strategy around Mr. Jenkins's admission that he shot at Brian Young. In addition, from statements contained in the police file, we know what the testimony by Mr. Williams and Mr. Johnson would have been. Mr. Williams could only say that he thought his white GMC Jimmy, which he had loaned the previous Sunday to an individual called "B.A." who had a semi-automatic weapon, might have been used in the commission of the murder. Mr. Johnson could say only that he saw a blue short-bed truck leaving the area after the shots were fired. Neither statement offers evidence exonerating Mr. Jenkins. Moreover, it cannot be said that the information contained in either statement would have changed the outcome of the trial.

██ ██ Mr. Jenkins further alleges that his trial counsel was ineffective for failing to have a fingerprint analysis conducted on the shell casings found at the crime scene. He offers no proof that exculpatory evidence could have been obtained through a fingerprint analysis. Accordingly, this argument is without merit. As Mr. Jenkins has not demonstrated a reasonable probability that any potential error by his trial counsel would have provided the jury with a reasonable doubt respecting his guilt, we affirm the trial court's denial of his ineffective-assistance-of-counsel claims.

### III. Denial of Motion to Suppress Custodial Statement

██ In his third point on appeal, Mr. Jenkins claims that the trial court erred in refusing to suppress his custodial statement for two reasons: (1) the statement was involuntary, and (2) he was not allowed to have his mother present during questioning after he requested her presence. In reviewing a trial judge's ruling on a motion to suppress, we make an independent determination based upon the totality of the circumstances, viewing the evidence

in a light most favorable to the State, and we reverse only if the ruling is clearly against the preponderance of the evidence. *Wright v. State*, 335 Ark. 395, 983 S.W.2d 397 (1998). The credibility of witnesses who testify at a suppression hearing about the circumstances surrounding the appellant's in-custody confession is for the trial judge to determine, and we defer to the superior position of the trial judge in matters of credibility. *Id.* Conflicts in the testimony are for the trial judge to resolve, and the judge is not required to believe the testimony of any witness, especially that of the accused since he is the person most interested in the outcome of the proceedings. *Id.*

A statement made while the accused is in custody is presumptively involuntary, and the burden is on the State to prove, by a preponderance of the evidence, that a custodial statement was given voluntarily and was knowingly and intelligently made. *Smith v. State*, 334 Ark. 190, 974 S.W.2d 427 (1998). We make an independent review of the totality of the circumstances surrounding a confession to determine whether the appellant knowingly, voluntarily, and intelligently waived his constitutional rights. *Id.* There are two components to the inquiry into the validity of a defendant's waiver. First, we examine whether the statement was voluntary. *Id.* The "voluntary statement" argument addresses whether the statements were the product of a free and deliberate choice rather than intimidation, coercion, or deception. *Id.* We look at the following factors to aid us in making our determination: "age, education, and intelligence of the accused, lack of advice as to his constitutional rights, length of detention, repeated and prolonged nature of questioning, or the use of physical punishment." *Id.* Second, we examine whether the waiver was knowingly and intelligently made. *Id.* The "waiver of rights" argument focuses upon whether the waiver was made with a "full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it," as well as whether the accused was "uncoerced by police" when he made the choice to waive his rights. *Id.*

Mr. Jenkins asserts that he was only sixteen years old at the time of the questioning and had an IQ of only 75. In addition, he claims that the detectives questioning him never

inquired as to whether he was under the influence of drugs or alcohol. In his interview with a state forensic psychiatrist and during his testimony at the omnibus hearing, Mr. Jenkins stated that he was on "sherm," or PCP, at the time he gave his statement to police. This court has previously said that evidence of intoxication reflects only on the credibility of a statement, not its admissibility. *Smith v. State*, 334 Ark. 190, 974 S.W.2d 427. Detectives Weaver and Simpson, who took the statement from Mr. Jenkins, testified that he appeared to understand the rights form presented to him and that he told them he understood the form. He signed and initialed each statement on the *Miranda* rights form. The detectives also testified that, at the time of the confession, Mr. Jenkins did not appear to be under the influence of alcohol or drugs. His answers to questions were coherent, and his speech patterns were normal. The detectives stated that they made no threats or promises to Mr. Jenkins. Viewing the evidence in a light most favorable to the State, the trial court was not clearly erroneous in finding that Mr. Jenkins's custodial statement was given voluntarily and that the waiver was knowingly and intelligently made.

Without regard to the voluntariness of his statement, Mr. Jenkins alleges that, despite his request, he was denied the right to the presence of his mother while making his statement to police. At the omnibus hearing, Mr. Jenkins testified that he requested his mother while the police were questioning him about the murder. He stated that the police would not allow his mother to come see him. His testimony was not refuted by the State. Mr. Jenkins claims that the law can be found at Arkansas Code Annotated § 9-27-317(i)(2)(C)(ii) (2002), providing that a law enforcement officer "shall not question a juvenile who has been taken into custody for a . . . criminal offense if the juvenile has indicated in any manner that he or she: (ii) Wishes to speak with his or her custodial parent, guardian, or custodian or to have that person present."

██ ██ According to our recent decision in the case of *Ray v. State*, 344 Ark. 136, 40 S.W.3d 243 (2001), the provisions of Ark. Code Ann. § 9-27-317(g)(2), now codified at Ark. Code Ann. § 9-27-317(i)(2)(C) and (D), are applicable only to matters

being considered by the juvenile court.[2] As the felony information charging Mr. Jenkins with capital murder was not filed in juvenile court, he had no right to assert that his mother should have been present during his questioning.

### IV. Denial of Request for Mistrial

For his final point on appeal, Mr. Jenkins asserts that the trial court erred in denying his request for a mistrial. A mistrial is a drastic remedy and should be declared only when there has been an error so prejudicial that justice cannot be served by continuing the trial, or when the fundamental fairness of the trial itself has been manifestly affected. *Gaines v. State*, 340 Ark. 99, 8 S.W.3d 547 (2000). The trial court has wide discretion in granting or denying a motion for mistrial, and, absent an abuse of that discretion, the trial court's decision will not be disturbed on appeal. *Id.*

Mr. Jenkins's motion for mistrial followed the trial testimony of Tanisha Franklin. On direct, Ms. Franklin testified:

Q: Now, you said that you heard the Defendant say why he shot him.

A: Yes.

Q: What did he say specifically in that regard?

A: It's a Crip putting it on a Blood.

Q: Okay. And you're talking about a Crip and a Blood. Are those street gangs to your knowledge?

A: . . . Yes.

Later, during cross-examination, the witness was asked by defense counsel: "Now, you said that you heard him say, it's a Crip putting it on a Blood." Defense counsel then asked Ms. Franklin if

---

[2] In so holding, we distinguished the following statement in *Conner v. State*, 334 Ark. 457, 465, 982 S.W.2d 655, 659 (1998), as *obiter dictum*: "[A] juvenile has the right to speak to a parent or have a parent present during questioning in juvenile and criminal proceedings." *Ray v. State*, 344 Ark. at 146-47, 40 S.W.3d at 249-50.

she remembered telling police that she heard Mervin say "put this on Elizabeth [Ms. Bowman's infant daughter]? . . . Not put it on a Crip?" In response, Ms. Franklin testified that she heard Mr. Jenkins make both statements. Defense counsel then referred Ms. Franklin to her police statement in which she said: "I don't know. It's like another word. It's like putting it on a Crip, putting it on a Blood."

On redirect examination, the following colloquy occurred:

Q: And when you said in your statement that the Defendant said, "Put it on Elizabeth," what does that mean to you? When you say put it on somebody, what are you talking about?

A: It's like — Doing that it's like putting it on something that's close to you. Like you can say I put that on God, saying that you swear that you're not going to tell.

. . . .

Q: When you said a Crip putting it on a Blood, what does that mean to you?

A: Okay. To me it meant at that time was that he was a Blood, so he was trying to get out the Blood gangs to become a Crip, and so he had to shoot a Blood to become a Crip.

Following Ms. Franklin's testimony, Mr. Jenkins objected to the inference that Mr. Jenkins was a member of a gang and made a motion for mistrial, suggesting that she had no personal knowledge of gang activity by Mr. Jenkins. The trial court denied the motion for mistrial, but admonished the jury not to consider the last response of the witness. Defense counsel indicated that the admonishment was satisfactory.

■■ Without any citation to authority, Mr. Jenkins now argues that the mention of gang activity by Ms. Franklin was so prejudicial that the only sufficient recourse would have been to declare a mistrial. However, this court has held that, where similar evidence was previously admitted without objection, the admission of later testimony on the same subject is not prejudicial. *Hooper v. State*, 311 Ark. 154, 842 S.W.2d 850 (1992). No prejudice results where the evidence erroneously admitted was

merely cumulative. *Gaines v. State*, 340 Ark. 99, 8 S.W.3d 547. As defense counsel questioned Ms. Franklin about the statement "It's a Crip putting it on a Blood" on cross-examination, the later objected — to reference was merely cumulative. In any event, the defense was satisfied with the trial court's admonishment. Thus, the trial court did not err in denying Mr. Jenkins's request for a mistrial.

### V. Arkansas Supreme Court Rule 4-3(h)

The transcript of the record in this case has been reviewed in accordance with our Rule 4-3(h) which requires, in cases in which there is a sentence of life imprisonment or death, that we review all prejudicial errors in accordance with Ark. Code Ann. § 16-91-113(a). None have been found.

As a result of two separate motions filed by the State, we directed Mr. Jenkins's attorney, Tona M. DeMers, to comply with Ark. R. Sup. Ct. 4-2(a)(6) and Ark. Sup. Ct. R. 4-3(h). Ms. DeMers failed to comply with our directives, and the State proceeded to prepare and file a supplemental abstract. Accordingly, a copy of this opinion will be forwarded to the Committee on Professional Conduct.

Affirmed.