Everett Lawrence KING *v.* STATE of Arkansas

CR 77-130                                        557 S.W. 2d 386

Opinion delivered October 24, 1977
(Division II)
[Rehearing denied December 5, 1977.]

344

*John Barry Baker,* Public Defender, by: *Joe B. Reed,* Dep. Public Defender, for appellant.

*Bill Clinton,* Atty. Gen., by: *Jackson Jones,* Asst. Atty. Gen., for appellee.

FRANK HOLT, Justice. Appellant was convicted by a jury of theft by receiving and his punishment was assessed at ten years' imprisonment. Appellant contends that the trial court erred in denying his motion to suppress evidence secured by a warrantless search. He asserts the search was unreasonable under the Federal Fourth Amendment and Art. 2, § 15, Ark. Const. (1874). In denying the motion to suppress, the court

ruled the search was conducted pursuant to a valid consent. Appellant argues that a search warrant should have been obtained. However, "[i]t is equally well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *Schneckloth* v. *Bustamonte*, 412 U.S. 218 (1973). Here as the owner and co-occupant of the premises, appellant's mother-in-law had the authority to and gave her consent to the warrantless search of her premises. Therefore, a search warrant was not required. See also *Robinson* v. *State*, 256 Ark. 675, 509 S.W. 2d 808 (1974); *Asher & Bradford* v. *City of Little Rock*, 248 Ark. 96, 449 S.W. 2d·933 (1970); *U.S.* v. *Matlock*, 415 U.S. 169 (1973); and Ark. Rules of Crim. Proc., Rule 11.2 (c) (1976).

Even so, appellant contends that the state failed to prove that the consent of appellant's mother-in-law was voluntarily given because of the coercive nature of the confrontation. The voluntariness of consent to a search is a question of fact to be determined from the totality of the circumstances and the burden is on the state to prove that consent was voluntarily given by clear and positive proof. *Harvey* v. *State*, 261 Ark. 47, 545 S.W. 2d 913 (1977); and *White* v. *State*, 261 Ark. 24, 545 S.W. 2d 641 (1977). Here two nonuniformed law enforcement officers appeared at Mrs. Griggs' home at night where she was alone. An officer conducting the search testified that, upon arrival at her residence, he identified himself and the other officer without displaying their guns or force, told her that they had reason to believe that there was a stolen television set in the house, and asked if they could come in to look for it. She testified that she knew one of the officers and was not intimidated by them. Further, they did not force themselves on her, were congenial and "very, very nice." Her reaction to the officers' request was that if the television set was stolen, she did not want it and she did not "have a bit of objection to them coming in, you know, and getting it." Not only did Mrs. Griggs permit the officers to search her house, she voluntarily informed them that there were other items in the house, "some talkers [C.B. equipment] in the other room," which might be subject to seizure. As was stated in *Williams* v. *State*, 237 Ark. 569, 375 S.W. 2d 375 (1964), where there is evidence, not only of waiver and consent, but also ac-

tive participation in the search, as here, there is no merit to the contention that one's right against unreasonable searches and seizures was violated. Clearly the evidence here is amply sufficient to support the trial court's finding that the state sustained its burden of proving by clear and positive evidence that Mrs. Griggs' consent was not the result of coercion.

Neither can we agree with appellant's argument that his mother-in-law's consent was procured through the officer's friendship with her and, therefore, was involuntary. It appears Mrs. Griggs had not seen the officer but once since childhood and the officer made his purpose for being there known at the outset. Neither do we find merit in appellant's contention that his mother-in-law's inability to "read very good" vitiated her consent in view of the fact that the consent form was read and explained to Mrs. Griggs, who has an eighth grade education.

Appellant also questions whether or not Mrs. Griggs actually signed the consent form produced at the suppression hearing. She, herself, verified that her signature was authentic. However, she remembered signing the form in a different location than where her signature appeared. Both officers testified that her signature was in the same location as where she originally signed. This conflict in evidence was a question of fact for the court to resolve in determining the voluntariness of her consent.

Appellant next argues that his mother-in-law's consent was not voluntary because the officers "x'd" out a portion of the form relating to her right to know that any evidence found might be used against her at trial. The officers testified that they deleted that portion because it was inapplicable to her since the seized property was not to be used against her. We perceive no resulting prejudice to the appellant.

Appellant further argues that even if the consent was voluntarily given, the state should be required to prove a knowing and intelligent waiver and since Mrs. Griggs was not told of her right to refuse consent to the search, the search was invalid. However, a knowing and intelligent consent is

not required by our Federal Constitution. In *Schneckloth* v. *Bustamonte, supra,* the court said:

> There is a vast difference between those rights that protect a fair criminal trial and the rights guaranteed under the Fourth Amendment. Nothing either in the purpose behind requiring a 'knowing' and 'intelligent' waiver of trial rights, or in the practical application of such a requirement suggests that it ought to be extended to the constitutional guarantee against unreasonable searches and seizures.

Rather, knowledge of the right to refuse consent is only a factor to be considered in determining the voluntariness of consent and the state is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent. *United States* v. *Watson,* 423 U.S. 411 (1976); and *Schneckloth* v. *Bustamonte, supra.* Even so, appellant urges that since each state has the power to impose higher standards on searches and seizures under its own laws or constitution than are required by our Federal Constitution, we should impose a greater standard than articulated in *Schneckloth.* In our view the *Schneckloth* standard of required proof in consent to search is adequate under the terms of our constitution. Art. 2, § 15, Ark. Const. (1874). Although it appears Mrs. Griggs was not verbally informed of her right to refuse consent, she signed a consent to search her premises and a waiver of her right to be free from unreasonable searches and seizures. She acknowledged that the consent and waiver form was read to her, she understood and signed it.

Appellant also argues that the search was rendered invalid by the officers' failure to give Mrs. Griggs a receipt listing the items seized as required by Rules of Crim. Proc., Rule 11.4 (1976). Here a copy of the consent form with a list of the items seized was given to appellant's wife. In the circumstances we perceive no prejudice is demonstrated.

Appellant next asserts that the court erred in overruling his motion to dismiss the charge of theft by receiving against

him on the basis of former jeopardy and collateral estoppel. Appellant had shortly before been convicted of burglary in Benton County. During that burglary a television set was stolen. Appellant moved to dismiss the charge of theft by receiving this television set on the basis that the charge was predicated upon the same facts, circumstances and criminal episode as the burglary charge. The court denied the motion on the ground that burglary is a separate offense from theft by receiving. Appellant contends that his rights, under the federal and state double jeopardy clauses to be free from multiple punishments for the same offense, have been violated because there has only been on continuous and related criminal activity for which he has received two punishments. We disagree. It is true, as appellant asserts, that Ark. Crim. Code § 41-105 (3) (1976) prohibits conviction of more than one offense when the same uninterrupted conduct may establish more than one offense and the conduct constitutes an offense defined as a continuing course of conduct. However, Ark. Crim. Code § 41-2002 (1976) provides that a person commits burglary if he enters or remains unlawfully in an occupiable structure with the purpose of committing therein any offense punishable by imprisonment. The commentary to § 41-2002 states that such an act of unlawful entry is an independent and substantive offense with the result that cumulative penalties may be imposed for entering with intent to steal and for stealing. Theft by receiving is committed when one receives, retains or disposes of stolen property knowing or with good reason to know it was stolen. Ark. Crim. Code § 41-2206 (1) (1976). The commentary to § 41-2206 (1) states the purposes of the statute are to allow a person to be convicted of theft by receiving without proof that he took the property himself or acquired it from the actual thief and, further, to dry up the market in stolen goods thereby discouraging theft. In light of the above, it is clear that the legislature intended the offenses to be separate and to authorize multiple punishments.

It is well settled that the test, as to whether offenses constitute a continuing offense, is whether the individual acts are prohibited or the course of action which they constitute. If the

former, as here, then each act is punishable separately. *Britt v. State*, 261 Ark. 488, 549 S.W. 2d 84 (1977). to the same effect are *Polk v. State*, 252 Ark. 320, 478 S.W. 2d 738 (1972); and *Whitted v. State*, 187 Ark. 285, 59 S.W. 2d 597 (1933). Further, in *Decker v. State*, 251 Ark. 28, 471 S.W. 2d 343 (1971), we stated that the test of double jeopardy is not whether a defendant has already been tried for the same act, but whether he has been put in jeopardy for the same offense, and where two statutes are intended to suppress different evils, conviction under one will not preclude prosecution of the other.

Appellant further argues that he cannot be convicted of both crimes because theft by receiving constitutes an included offense of burglary and § 41-105 (1) (a), as defined by § 41-105 (2) (a), all of the elements of the lesser offense must be contained in the greater offense — the greater containing certain elements not contained in the lesser. *Gaskin v. State*, 244 Ark. 541, 426 S.W. 2d 407 (1968). Here the offense of burglary clearly does not contain all the elements of theft by receiving and § 41-105 (2) (a) is inapplicable.

Additionally, appellant argues that theft by receiving is an included offense of burglary under § 41-105 (2) (b) because the burglary constituted an attempt to commit theft by receiving. The commentary to § 41-2002 states that by hypothesis every burglary is an attempt to commit some other crime, but the purposes of making it a separate offense were to cover the distinctive situation for which they were devised; i.e., invasion of premises under circumstances likely to pose a threat to the safety of persons, and to separate this concept from other concepts such as attempt. Since theft by receiving is not in the same generic class as burglary, § 41-105 (2) (c) is inapplicable to make it an included offense.

Appellant also contends that Ark. Crim. Code § 41-107 (1976) bars his conviction of theft by receiving. However, § 41-107 is not applicable where the two offenses require different proof of facts and the law defining each offense is intended to prevent a substantially different evil. Here appellant's conviction for theft by receiving was not based upon his entry into an occupiable structure, but upon his

possession of stolen property in a different county two days after the burglary, a distinct and separate evil. For the reasons previously discussed, § 41-107 is inapplicable.

As to appellant's incidental argument that he was entitled to a continuance, we deem it sufficient to say that he has not demonstrated the court abused his discretion

Affirmed.

We agree: GEORGE ROSE SMITH, FOGLEMAN, ROY and HICKMAN, JJ.