Joey MILLER *v.* STATE of Arkansas

99-277                                    994 S.W.2d 476

Supreme Court of Arkansas
Opinion delivered July 15, 1999

*Melissa Dorn*, for appellant.

*Mark Pryor*, Att'y Gen., by: *David R. Raupp*, Ass't Att'y Gen., for appellee.

ANNABELLE CLINTON IMBER, Justice. This is a juvenile case. The appellant, Joey Miller, was adjudicated delinquent for capital-felony murder and was committed to the Department of Youth Services until his twenty-first birthday. On appeal, Miller contends that the trial court should have suppressed his inculpatory statement because: 1) the police failed to inform him of his statutory right, under Ark. Code Ann. § 9-27-317(g)(2)(A)(ii) (Repl. 1998), to speak to a parent or guardian or to have one present during questioning; 2) the statement was not voluntarily made; and 3) he did not knowingly and intelligently waive his rights. We affirm on all three points.

On September 1, 1998, Joey Miller and his cousin, Tyrone Duncan, were stopped for speeding. The police soon discovered that the car they were driving had been reported as stolen and that they were suspects in the kidnapping of an eighty-four-year-old man from Little Rock. The police arrested the boys and transported them to the Jackson County Detention Center in Newport.

Detectives J.C. White and Ronnie Smith questioned Miller around 6:45 p.m. or 7:00 p.m. that evening. Miller was just four

days away from his fourteenth birthday. After explaining that he was a suspect in the crimes of kidnapping, capital murder, theft of property, and theft by receiving, Detective Smith asked Miller if he could read and write. Miller responded in the affirmative and said that he had completed the sixth grade. This information was recorded on the *Miranda* waiver form, which Miller initialed. Detective Smith then read the *Miranda* waiver form to Miller, who indicated that he understood each of his rights, that he wanted to waive those rights, and then signed the form. The detectives, however, did not inform Miller of his statutory right to speak to a parent or guardian or to have one present during questioning.

After completing the *Miranda* waiver form, the detectives questioned Miller about the crimes. At first, Miller denied any involvement, but later he admitted to participating in the crimes. After taking a short break, the detectives started a tape recorder and read Miller his *Miranda* rights for a second time. Again, Miller indicated that he understood his rights and that he wished to waive them. Miller than gave a tape-recorded statement implicating himself in the kidnapping and murder of the victim.

During the suppression hearing, the detectives testified that Miller was coherent and did not appear to be under the influence of drugs or alcohol. They also testified that they did not use threats, promises, or coercion to obtain the statement, and that Miller did not invoke his rights to remain silent, to speak to an attorney, to talk to a parent or guardian or to have one present during questioning. Miller does not contest these assertions. Finally, the entire questioning lasted approximately two hours.

Miller's father, Floyd Prunty, testified that his son was slow to mature, that he was "a quiet, humble little boy," that he was a "follower," and that he did not understand "the big concepts of life." Mr. Prunty also testified that he notified the police on August 31 that his son was missing, but the police did not tell him that his son was in custody until 2:30 a.m. on September 2, which was after his son had waived his rights and had given an inculpatory statement. Mr. Prunty declared that if the police had contacted him, he would have been present during questioning, and,

more importantly, that he would not have allowed the police to question his son until he obtained an attorney.

At the conclusion of the suppression hearing, the trial court ruled that the taped statement was voluntarily, intelligently, and knowingly made because:

> the child was close[er] to 14 than 13. He was not threatened; he was not coerced; he was not promised anything. He gave a full and deliberate statement of an account of the events that transpired.

After questioning the wisdom of the law, the trial court ruled that:

> It's clear: The law enforcement officials are not legally bound and required to tell a juvenile of his or her right to request a parent to be present or a guardian to be present, which then automatically stops the proceeding. But that's what the law is.

> But you've got the other law, and you've got the other legal rights that are attached through *Miranda*, the right to remain silent, which he did not invoke; the right to request an attorney and have one appointed free if he so desired, which he did not invoke. After ruling that the State had "more than met its burden by a preponderance of the evidence," the court denied Miller's motion to suppress.

## I.   Ark. Code Ann. § 9-27-317(g)(2)(A) (Repl. 1998)

■ Arkansas Code Annotated § 9-27-317(g)(2)(A) (Repl. 1998), provides that:

> No law enforcement officer shall question a juvenile who has been taken into custody for a delinquent act or criminal offense if the juvenile has indicated in any manner that he:
>
> (i) Does not wish to be questioned;
>
> (ii) Wishes to speak with a parent or guardian or to have a parent or guardian present; or
>
> (iii) Wishes to consult counsel before submitting to any questioning.

In several cases, we have explained that juveniles, and not their parents, must invoke their right, under section 9-27-

317(g)(2)(A)(ii), to speak to a parent or guardian or to have one present during questioning. *Conner v. State,* 334 Ark. 457, 982 S.W.2d 655 (1998); *Isbell v. State,* 326 Ark. 17, 931 S.W.2d 74 (1996). In *Isbell,* we recognized that this was a somewhat onerous burden to place on the shoulders of a juvenile, but we recognized that this was the precise intention of the statute. *Isbell, supra.* Significantly, the legislature did not amend section 9-27-317(g)(2)(A)(ii) in response to *Isbell,* nor did it do so in this year's legislative session when it substantially revised the Juvenile Code. *See* The Extended Juvenile Jurisdiction Act of 1999, 1999 Ark. Acts 1192.[1]

The novel issue presented by this case is whether officers are required to inform juveniles of their right, under section 9-27-317(g)(2)(A)(ii), to speak to their parent or guardian or to have one present during questioning. The trial court ruled that officers are not required to do so, and we agree.

In *Miranda v. Arizona,* 384 U.S. 436 (1966), the United States Supreme Court held that during a custodial interrogation officers must inform the accused of certain *constitutional* rights, including the privilege against self-incrimination and the right to an attorney. These rights were extended to juveniles in *In re Gault,* 387 U.S. 1 (1967). There is not, however, a *constitutional* right for a juvenile to speak to a parent or guardian or to have one present during questioning. In fact, in *Fare v. Michael C.,* 442 U.S. 707 (1979), the United States Supreme Court held that a juvenile did not have a constitutional right to speak to his probation officer even though the juvenile trusted the probation officer who had a statutory duty to act in the juvenile's best interest. In reaching this result, the Court explained that the Constitution gives juveniles, as well as adults, only the right to speak to an attorney. *Id.*

Although it is not required by the Constitution, the Arkansas General Assembly has given juveniles the *statutory* right to speak to a parent or guardian or to have one present during questioning.

---

[1] Act 1192 of 1999 did not go into effect until July 30, 1999, and thus does not apply to the case at hand. Op. Att'y Gen. #99-120.

Ark. Code Ann. § 9-27-317(g)(2)(A)(ii). We emphasize that without this statutory provision, the police would not be required to allow a juvenile to speak to his parent or guardian even if the juvenile repeatedly made such a request. Because the right is *statutory* instead of *constitutional*, *Miranda* does not require the police to inform juveniles of that right. Hence, we must turn to the plain language of the act to determine if the legislature intended to impose such an obligation on the police. After a thorough review, we can find no such requirement in the clear language of the statute.

In sum, the legislature has given a juvenile the statutory right to speak to a parent or guardian or to have one present upon the condition that the juvenile makes such a request. The legislature has not, however, imposed upon the police the duty to inform the juvenile of that right, and we cannot do so where the statute is silent. Hence, this case is very similar to *K.M. v. State*, 335 Ark. 85, 983 S.W.2d 93 (1998), where we recently held that a juvenile does not have a right to assert the insanity defense in the adjudication phase of a delinquency proceeding because no such right could be found in the constitution or the juvenile statute.[2] Although we may question the prudence of giving a juvenile a right without imposing a corresponding duty on the police to inform the juvenile of that right, that is a policy decision properly left to the legislature, and not this court. *See Norton v. Hinson*, 337 Ark. 487, 989 S.W.2d 535 (1999); *McDonald v. Pettus*, 337 Ark. 265, 989 S.W.2d 9 (1999) (holding that the determination of public policy lies almost exclusively in the legislative domain, and the decision of the General Assembly in that regard will not be interfered with by the courts in the absence of palpable error).

For these reasons, we affirm the trial court's ruling that the detectives were not required to inform Miller of his statutory right under Ark. Code Ann. § 9-27-317(g)(2)(A)(ii) to speak to a parent or guardian or to have one present during questioning.

---

[2] After *K.M. v. State*, *supra*, was decided, the General Assembly gave juveniles the statutory right to assert the insanity defense in certain situations. *See* 1999 Ark. Acts 1192.

## II. Voluntary Statement

■ Next, Miller contends that his statement should be suppressed because it was not voluntarily made. In *Conner, supra,* we recently explained that:

> A statement is voluntary if it is "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Britt v. State,* 334 Ark. 142, 974 S.W.2d 436 (1998); *Sanford, supra.* In making this determination, we review the totality of the circumstances, and reverse the trial court only if its decision is clearly erroneous. *Id.* Relevant factors include the age, education, and intelligence of the accused; the lack of advice as to his constitutional rights; the length of detention; the repeated and prolonged nature of questioning; and the use of mental or physical punishment. *Id.* Two other pertinent factors are the statements made by the interrogating officers and the vulnerability of the defendant. *Kennedy v. State,* 325 Ark. 3, 923 S.W.2d 274 (1996); *Oliver v. State,* 322 Ark. 8, 907 S.W.2d 706 (1995).

Whether a juvenile's statutory rights have been violated is also a factor to be considered when applying the totality test. *Isbell, supra; Rouw v. State,* 265 Ark. 797, 581 S.W.2d 313 (1979). However, for the reasons explained above, we find no statutory violation in this case.

■ Miller was four days away from his fourteenth birthday when he was questioned. He had completed the sixth grade, he could read and write, and there was no evidence that he had a below average I.Q. Furthermore, the detectives properly informed Miller of his *Miranda* rights, the detention was not long, and there was no evidence of coercion, threats, or violence. Finally, distinguishable from *Conner, supra,* which we affirmed, the police did not use false statements, psychological tactics, promises, or any other devices to obtain Miller's confession. Accordingly, we cannot say that trial court was clearly erroneous when it found that Miller's statement was voluntarily given.

## III. Knowing and Intelligent Waiver

■ Finally, Miller contends that he did not knowingly and intelligently waive his *Miranda* rights. As we have explained in the

past, the relevant inquiry here is whether Miller waived his rights with "full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Conner, supra; Sanford v. State*, 331 Ark. 334, 962 S.W.2d 335 (1998). We make this determination by reviewing the totality of the circumstances surrounding the waiver including the age, experience, education, background, and intelligence of the defendant, and we will reverse a trial court's ruling only if it was clearly erroneous. *Conner, supra; Sanford, supra.*

■ At the time Miller waived his *Miranda* rights, he was four days shy of his fourteenth birthday and in the seventh grade. The detectives read Miller his *Miranda* rights twice, and Miller executed a waiver form. There is also no indication from the record that Miller is unintelligent. Finally, there was no evidence that Miller was under the influence of drugs or alcohol at the time he decided to waive his rights. Based on the totality of these circumstances, we hold that the trial court did not err when it ruled that Miller knowingly and intelligently waived his *Miranda* rights.

■ Finally, the appellant contends that as a matter of law a juvenile does not have the mental capacity or maturity to knowingly and intelligently waive his or her constitutional rights. In support of this argument, Miller cites several statutes where the legislature has determined that a juvenile does not have the maturity or capacity to undertake certain activities. *See, e.g.,* Ark. Code Ann. § 3-3-203 (Supp. 1997) (a person must be twenty-one years old to purchase or possess alcoholic beverages); Ark. Code Ann. § 27-16-604 (Supp. 1997) (a person must be sixteen years old to obtain an unrestricted driver's license). As mentioned previously, the *constitutional* analysis of whether a juvenile or adult has knowingly and intelligently waived his or her rights depends upon the totality of the circumstances, including the individual's age and maturity. *See, Conner supra; Isbell, supra.* Neither this court nor the legislature has developed a bright-line rule based on the accused's age or maturity alone, and we refrain from doing so in this case.

Affirmed.